UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SHAWN LABRIE,<br><br>    Plaintiff,<br><br>    v.<br><br>OAKHURST DAIRY,<br><br>    Defendant. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
**INJUNCTIVE RELIEF REQUESTED**

NOW COMES the Plaintiff, Shawn LaBrie ("LaBrie"), by and through undersigned counsel, and complains against the Defendant, Oakhurst Dairy ("Oakhurst"), as follows:

SUMMARY

1. LaBrie is an experienced, skilled truck driver who applied for a job with Oakhurst in the fall of 2015. Oakhurst refused to hire LaBrie because LaBrie was regarded as having or likely to develop a disability as defined by the Maine Human Rights Act ("MHRA") and the Americans with Disabilities Act ("ADA"). Oakhurst claims that LaBrie told Oakhurst that he did not want to have his application subjected to the "standard level of scrutiny" that Oakhurst applies when candidates seek employment with the company and that it was LaBrie who "removed himself from consideration for rehire." Oakhurst's stated reasons are false and a smokescreen for disability discrimination.

JURISDICTION AND PARTIES

2. This action arises under the MHRA, 5 M.R.S. §§ 4551 *et seq.*, and the ADA, 42 U.S.C. §§ 12101 *et seq.*

1

3. LaBrie is a United States citizen residing in the City of Westbrook, County of Cumberland, in the State of Maine.

4. Oakhurst is a Maine business corporation that operates a manufacturing facility and distribution network based in the City of Portland, County of Cumberland, in the State of Maine.

## JURISDICTION

5. Oakhurst had 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

6. Oakhurst had more than 200 employees in 2016.

7. This Court has subject matter jurisdiction over LaBrie's federal and state claims pursuant to 28 U.S.C. §§ 1331 and 1367.

8. On or about November 12, 2015, LaBrie filed a timely Complaint/Charge of Discrimination against Oakhurst alleging unlawful disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

9. On or about October 20, 2016, the MHRC issued a Notice of Right to Sue with respect to LaBrie's state law claims.

10. On or about November 17, 2016, the EEOC issued a Notice of Right to Sue with respect to LaBrie's federal law claims.

11. LaBrie exhausted his administrative remedies with respect to all claims set forth in this Complaint.

## FACTUAL ALLEGATIONS

12. LaBrie was employed by Oakhurst as a driver from October 2006 to October 2014 at which time he resigned voluntarily to work as a driver for another employer.

13. During his employment with Oakhurst, LaBrie's job performance was always rated as "good" or better.

14. During his employment with Oakhurst, LaBrie injured his back a few of times.

15. LaBrie's injuries did not result in any permanent impairment.

16. In March 2008, LaBrie injured his back in a motor vehicle accident and was out of work for about one week.

17. LaBrie injured his back again (acute lumbar strain, sciatica) in January – February 2012. Those injuries were reported to the Workers' Compensation Board. LaBrie had modified duty (paperwork/office type tasks) for less than a week during that time period.

18. LaBrie injured his upper right back in December 2012.

19. On May 4, 2013, LaBrie told Shawn Stephenson, Oakhurst's Distribution Supervisor, that he tweaked his back and that he had seen his chiropractor for care and treatment. Stephenson talked to LaBrie about Stephenson's concerns that Oakhurst would be liable if LaBrie injured himself again. Stephenson wrote a note that was place in LaBrie's personnel file that read, in part, "I…explained that [LaBrie] is a high risk of re-injuring his back because of his past injuries…"

20. In October 2014, LaBrie resigned from Oakhurst for another job opportunity. He was disappointed to learn that the job did not turn out as expected. He began looking for alternative work.

21. In late September 2015, LaBrie talked to Stephenson about jobs at Oakhurst.

22. Stephenson told LaBrie that they were hiring drivers.

23. LaBrie submitted his application online to Oakhurst on Sunday, September 20, 2015.

24. LaBrie's application was complete and clearly demonstrated that he was a qualified candidate.

25. On Monday, September 21, 2015, LaBrie texted Stephenson to make sure that Oakhurst had received the application. Stephenson told LaBrie that he would be contacted by Paul Connolly.

26. Connolly viewed LaBrie's personnel file before calling LaBrie back including documents that disclosed the fact that LaBrie had injured his back while working at Oakhurst in the past. Verbal warnings issued on December 7, 2010 and January 18, 2012 both contain references to on-the-job injuries.

27. Connolly learned about LaBrie's injuries by looking at his personnel file and by talking to Stephenson.

28. Later in the day on September 21, 2015, LaBrie received a call from Connolly. Connolly acknowledged LaBrie's application and stated that the company does not rehire.

29. Connolly has admitted that his statement was false.

30. Oakhurst does not have a "no rehire" policy.

31. On September 21, 2015, Connolly told LaBrie that there was a sticky note on LaBrie's file that read, "No Rehire."

32. When Oakhurst produced a copy of LaBrie's personnel file, the sticky note was gone.

33. LaBrie told Connolly that LaBrie was aware that Oakhurst does rehire because he knew a driver who was rehired after he had left the company was gone for quite some time.

34. Connolly told LaBrie, "Well, when I started looking in the file I see accidents in there." Connolly told LaBrie that if his folder was empty maybe LaBrie could be rehired but with all the accidents he had on file, Oakhurst would not rehire LaBrie.

35. Connolly said that LaBrie kept getting hurt on the job.

36. Connolly said that he would have to "go in front of the Board" and "stick his neck out" for LaBrie to get him rehired and he did not even know LaBrie so he was not willing to do that.

37. Connolly told LaBrie that he had a stack of applications and that LaBrie should pursue other jobs. Connolly told LaBrie not to wait for Oakhurst to get back to him, but that if nothing else worked out, LaBrie could call back in four to six weeks.

38. Oakhurst alleges that LaBrie told Connolly that he (LaBrie) had other potential job opportunities that he needed/wanted to pursue if Oakhurst did not hire him immediately. This is false.

39. Connolly's statement about having a stack of applications was false. Information submitted by Oakhurst to the MHRC shows that LaBrie was the first person to apply for job openings in the fall of 2015. When LaBrie was speaking to Connolly on Monday, September 21, 2015, there were no other applicants.

40. After the September 21, 2015 phone call, LaBrie called Connolly back but had trouble getting ahold of him.

41. LaBrie finally got through to Connolly on Thursday, November 12, 2015.

42. Connolly told LaBrie that he was just stepping into a meeting and invited LaBrie to call back the next Monday. Connolly mentioned that he was busy on Friday, moving offices around.

43.     LaBrie called Connolly on Monday, November 16, 2015 at 9:30 AM and left a message.

44.     LaBrie called again at about 4:00 PM.

45.     Someone answered and told LaBrie that Connolly was not available. LaBrie told the person that he had already left a message for Mr. Connolly. Connolly did not return LaBrie's calls.

46.     Oakhurst treated LaBrie's application for employment in the fall of 2015 differently than it treated other applicants for employment or rehire.

47.     When LaBrie was originally hired in October 2006, the application process was easy. He dropped off his application on a Friday afternoon. Mike Berg, the Distribution Manager, called LaBrie right away and set up an interview for the following day, a Saturday. LaBrie met with and was interviewed by Berg on Saturday. An Oakhurst driver who knew LaBrie as a co-worker when they both worked for another employer gave LaBrie a good recommendation. After the interview, the Human Resources department did a background check. They ran LaBrie's license and took a copy of his Department of Transportation medical card. LaBrie received a job offer on Tuesday or Wednesday that week. In all, the process took five or fewer days.

48.     Oakhurst told the MHRC that LaBrie "removed himself from consideration" which is untrue and illogical. LaBrie was told "no rehire," then told that he could not be hired because he kept getting hurt on the job, then told to call back in six weeks if he (LaBrie) had not found another job somewhere else. LaBrie persisted and called back on November 12, 2015 and Connolly failed to return his call. To this day, LaBrie is still waiting to hear back from Oakhurst about his application.

6

49.     The factual background provided by Oakhurst to the MHRC about LaBrie's prior employment is inconsistent with its stated reason for not rehiring LaBrie. Out of all the possible comments that Oakhurst could have highlighted from LaBrie's eight years of working hard for the company, Oakhurst picked out three instances when the company said something to LaBrie about working safely. The incidents described by Oakhurst were insignificant. The only reason to highlight these incidents is in an effort prove that LaBrie would not have been rehired because of "safety concerns."

50.     Oakhurst did not claim that LaBrie was not rehired because of safety concerns. Oakhurst asserted certain facts and argument as an after-the-fact rationalization for discriminating against LaBrie.

51.     LaBrie's personnel file contains minor warnings over an eight year period during which time LaBrie received consistently high job performance ratings. The warnings were for minor issues:

9/9/2009 - Verbal warning – loss of product/no power source

> The value of the lost product was less than $100 and there was no proof that LaBrie was responsible. Other people who could have left the truck unplugged include the loaders, unloaders, and the yard jockey.

12/7/2010 - Verbal warning – not performing duties in a safe manner, injury

> LaBrie pinched his sciatic nerve while lifting and carrying product to a loading dock. LaBrie went to his chiropractor for an adjustment and had no lost time from work. Oakhurst gave LaBrie a verbal warning to punish him for getting injured, not because LaBrie violated any policy or directives.

1/18/2012 - Verbal warning – failure to report an injury

7

>LaBrie was rear-ended by another driver while he was working and injured his back. Oakhurst was well-aware of the accident. Oakhurst put the burden on LaBrie to recover his medical expenses and lost wages from the other driver. LaBrie had to hire his own lawyer and repaid workers' comp everything that was paid out. LaBrie had a flare-up of his back symptoms on his day off from work and needed urgent care. The doctor called Oakhurst and reported the flare up. Oakhurst was reimbursed for LaBrie's medical care when his personal injury claim was settled. These facts are not a legitimate basis for not rehiring LaBrie.

6/5/2012 - Written warning – backing into a customer's kitchen exhaust fan

>This was a minor accident that caused the customer no bad feelings whatsoever. The dent was repaired by knocking the fan back into shape. The cost of the repair was only about $186.

52. Information submitted by Oakhurst to the MHRC provides proof that LaBrie would have been hired but for disability discrimination.

53. Oakhurst hired employees who it did not regard as disabled who were far less qualified than LaBrie.

54. For example, Oakhurst hired a driver with the initials C.E. on October 12, 2015. Edgerly was working in a garage when he applied to Oakhurst. He had some prior driving experience but not as much as LaBrie.

55. On November 17, 2015, Oakhurst hired a driver with the initials J.M., an applicant with only 2.5 years of experience driving a bus for senior citizen programs.

56. Oakhurst hired a driver with the initials D.C. on November 12, 2015, a driver with far less driving experience than LaBrie.

8

57. In this case, Oakhurst rejected LaBrie's application for employment based on its unfounded belief that his back impairment put him at risk for future injury. There is direct evidence of this. Connolly told LaBrie that he was concerned because LaBrie "kept getting hurt on the job."

58. Oakhurst has taken the position that LaBrie withdrew his application from consideration. Telephone and text message records demonstrate this to be false.

59. Oakhurst has also argued that even if LaBrie had been given fair consideration as an applicant, he would not have been hired because he could not perform the job safely. However, there is no evidence other than speculation to show that rehiring LaBrie would endanger his or anyone else's health or safety.

60. Oakhurst's reasons for not rehiring LaBrie have shifted and changed over time. When an employer's reason for taking an adverse employment action changes over time, it is grounds for finding that the stated reason is false.

61. Oakhurst's practice of looking through a former employee's personnel file(s) as part of the rehire process violates the MHRA's and ADA's prohibition against pre-employment inquiries and requirements that employees' and applicants' medical information be treated as a confidential record and not shared with managers who have the power to hire and fire.

62. By looking at a former employee's personnel file, an employer accesses information about the applicant that it is prohibited from asking including, potentially, the nature and severity of a physical impairment.

63. In this case, the information that Connolly unlawfully obtained by looking at LaBrie's personnel file is the fact that LaBrie had physical impairments as a result of injuries.

64. Oakhurst refused to rehire LaBrie because of unlawful disability discrimination in violation of the MHRA and ADA.

## COUNT I: MHRA

65. Paragraphs 1-64 are incorporated by reference.

66. Oakhurst's refusal to rehire LaBrie violated the MHRA.

## COUNT II: ADA

67. Paragraphs 1-66 are incorporated by reference.

68. Oakhurst's refusal to rehire LaBrie violated the ADA.

## COUNT III: MHRA – Pre-Employment Inquiry

69. Paragraphs 1-68 are incorporated by reference.

70. Oakhurst's manager's review of LaBrie's personnel file (and/or sharing of information between managers) constituted a pre-employment inquiry that violated the MHRA.

## COUNT IV: ADA – Pre-Employment Inquiry

71. Paragraphs 1-70 are incorporated by reference.

72. Oakhurst's manager's review of LaBrie's personnel file (and/or sharing of information between managers) constituted a pre-employment inquiry that violated the ADA.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E.  Award equitable-relief for back pay, benefits and prejudgment interest;

F.  Award compensatory damages in an amount to be determined at trial;

G.  Award punitive damages in an amount to be determined at trial;

H.  Award nominal damages;

I.  Award attorney's fees, including legal expenses, and costs;

J.  Award prejudgment interest;

K.  Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or age;

L.  Require Oakhurst to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination in the future;

M.  Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

N.  Require that Defendant train all management level employees on the protections afforded by the MHRA and ADA;

O.  Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant refused to rehire him because of disability discrimination and that in fact he is eligible for rehire; and

P.  Grant to Plaintiff such other and further relief as may be just and proper.


Dated: November 17, 2016                    /s/ Chad T. Hansen
                                            chansen@maineemployeerights.com

                                            /s/ Peter Thompson
                                            pthompson@maineemployeerights.com

                                            Attorneys for the Plaintiff

MAINE EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343